IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERIC WALLS                                 :            CIVIL ACTION

        v.                                 :

MICHAEL W. HARLOW, SUPT., et al.           :            NO.  11-3001


### REPORT AND RECOMMENDATION

THOMAS J. RUETER
United States Magistrate Judge                          December 20, 2011

        Presently before the court is a pro se petition for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254.  Petitioner is incarcerated in the Pennsylvania State Correctional

Institution in Frackville, Pennsylvania.  For the reasons that follow, the court recommends that

the petition be denied.

## I.        BACKGROUND AND PROCEDURAL HISTORY

        Following a three day trial before the Honorable John M. Younge in the Court of

Common Pleas of Philadelphia County from March 25 to 27, 2002, a jury found petitioner guilty

of two counts of attempted murder, two counts of aggravated assault, and one count of

possessing an instrument of crime.  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 1

(C.P. Phila. Mar. 29, 2006).  On September 18, 2002, petitioner was sentenced to an aggregate

term of incarceration of seventeen and one-half to thirty five years.  Id.

        The trial court described the facts of this case as follows:

            Maurice Robinson came home from North Carolina to Philadelphia for
        summer break between semesters in college.  While in Philadelphia, Mr.
        Robinson worked at a lounge managed by his mother.  Coworker and friend
        Syreeta Middlebrooks, also worked at this lounge.  Mr. Robinson testified that he
        was scheduled to leave town on August 23, 2000 to return to college in North
        Carolina.  He wanted to give Ms. Middlebrooks his address and phone number in

North Carolina, so on August 22, 2000, he asked Damon Green to give him a ride to her apartment.  N.T., 3/25/02, 81; 3/26/02, 25.

Ms. Middlebrooks lived in an apartment located at 2230 North 12th Street, where she raised her and the Defendant's two year old child.  Mr. Robinson testified that the Defendant had previously threatened his life and warned him to stay away from Ms. Middlebrooks.  N.T., 3/25/02, 60-63.  However, Mr. Robinson believed it was safe to travel to Ms. Middlebrooks' apartment because he thought the Defendant was out of town serving in the Navy on August 22, 2000.  N.T., 3/25/02, 81; 3/26/02, 25.  In actuality, the Defendant was at Ms. Middlebrooks' apartment when Mr. Robinson and Mr. Green arrived and knocked on the door.  N.T., 3/25/02, 72.

A physical altercation erupted between Mr. Robinson and the Defendant on the porch of the apartment.  The physical altercation ended when Mr. Robinson was shot – once in the neck and once in both thighs.  Mr. Green began to flee the scene, and he was shot in the back.  N.T., 3/24/04 [sic], 84-85; 3/26/04 [sic], 94-97.

Mr. Robinson and Mr. Green testified that they fled the scene while the Defendant attempted to reload his gun.  Mr. Robinson testified that he ran to Mr. Green's automobile and drove himself to Temple University Hospital.  N.T., 3/25/02, 87-89.  Mr. Green testified that he ran around the corner and told a stranger that he had been shot.  The stranger called police who took him to Temple University Hospital.  N.T., 3/26/02, 97-98.

Id. at 2-3.

Petitioner did not file a direct appeal from these convictions.  On July 1, 2003, petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq.  Appointed counsel filed an amended PCRA petition on April 22, 2004 and a second amended PCRA petition on October 19, 2004.  Id.  A hearing was held on June 23, 2005, and the trial court reinstated petitioner's right to file a direct appeal.  Id. at 2.  On direct appeal, petitioner raised three issues: (1) the evidence was insufficient to support the convictions; (2) the trial court abused its discretion by imposing an excessive sentence; and (3) the trial court abused its discretion by refusing to grant petitioner's nunc pro

<u>tunc</u> post sentence motions filed on July 1, 2005. <u>Id.</u> at 3-4. The trial court denied petitioner's claims.

Petitioner filed an appeal to the Superior Court of Pennsylvania raising four claims: (1) the evidence was insufficient to support the convictions; (2) the trial court abused its discretion by refusing to grant petitioner's <u>nunc pro tunc</u> post sentence motion alleging that the verdicts were against the weight of the evidence; (3) the trial court abused its discretion by refusing to grant petitioner's <u>nunc pro tunc</u> post sentence motion alleging that the sentence imposed was unreasonable and excessive; and (4) the Superior Court of Pennsylvania should grant petitioner leave to file a new or amended PCRA petition in which he will raise claims of ineffective assistance of trial/sentencing counsel. <u>Commonwealth v. Walls</u>, 918 A.2d 793 (Table), No. 2224 EDA 2005, slip op. at 3-4 (Pa. Super. Ct. Dec. 12, 2006). The Superior Court of Pennsylvania found that petitioner's statement of matters complained of on appeal, required by Pa. R. App. P. 1925, was filed untimely and, therefore, petitioner's claims challenging the sufficiency and weight of the evidence, and the discretionary aspects of his sentence were waived. <u>Id.</u>, slip op. at 6. The Superior Court of Pennsylvania considered petitioner's claim challenging the legality of his sentence, noting that such a claim cannot be waived. <u>Id.</u> at 6-7. The Superior Court of Pennsylvania concluded that the trial court did not impose an illegal sentence when it imposed separate sentences for petitioner's aggravated assault and attempted murder convictions, and affirmed petitioner's judgments of sentence. <u>Id.</u> at 10. The Supreme Court of Pennsylvania denied review on July 19, 2007. <u>Commonwealth v. Walls</u>, 928 A.2d 1290 (Pa. 2007) (Table).

On June 9, 2008, petitioner filed a counseled second PCRA petition, and on July

23, 2008 a supplement thereto, raising six grounds for relief:

> (1)    Direct [A]ppeal [C]ounsel was ineffective for failing to preserve the claim
> that the trial court erred in prohibiting the defense from fully establishing the bias
> of the [C]omplainant by precluding inquiry into the facts of the [C]omplainant's
> pending criminal case.
>
> (2)    Trial [C]ounsel was ineffective in failing to request, or otherwise object to
> the absence of, an instruction regarding how the jury was required to consider the
> evidence of Mr. Robinson's pending charges.
>
> (3)    Trial [C]ounsel was ineffective in failing to object or otherwise move to
> exclude certain irrelevant "other crimes" evidence and failing to request a
> cautionary instruction regarding the "other crimes" evidence that was relevant.
>
> (4)    The [P]rosecutor's closing argument violated [P]etitioner's right to due
> process by calling Petitioner a "liar" labeling his defense a "defense of desperation
> designed to distract the jury" and suggesting that the police themselves thought
> the Petitioner was guilty, and all prior [C]ounsel were ineffective for failing to
> preserve this claim.
>
> (5)    The evidence was insufficient to sustain these convictions and this [C]ourt
> lacked jurisdiction to enter the convictions and impose sentence because the
> [C]ommonwealth never established that [P]etitioner shot the Complainant in
> Philadelphia County.
>
> (6)    Trial Counsel was ineffective for failing to investigate eyewitness Syreeta
> Middlebrooks who saw the entire incident and refuted critical aspects of the
> testimony of Commonwealth witness Maurice Robinson.

Commonwealth v. Walls, Nos. CP 0106-0192-0316, slip op. at 2, 3-4 (C.P. Phila. Sept. 30,

2009).  After issuing a notice of the court's intention to dismiss the PCRA petition without a

hearing pursuant to Pa. R. Crim. P. 907, the PCRA court dismissed the petition on March 26,

2009.  Id. at 1, 2.

Petitioner again appealed, raising the following five issues for appeal:

4

> (1)      Did the PCRA court err in summarily denying relief on the claim that prior counsel was ineffective for failing to preserve the claim that trial counsel erred in prohibiting the defense from fully establishing the bias of the complainant by precluding inquiry into the facts of the complainant's pending criminal case?
>
> (2)      Did the PCRA court err in summarily denying relief on the claim that trial counsel was ineffective for failing to object to the absence of an instruction regarding how the jury was required to consider the evidence of the complainant's pending criminal charges?
>
> (3)      Did the PCRA court err in summarily denying relief on the claim that trial counsel was ineffective for failing to object to the introduction of certain irrelevant "other crimes" evidence and for failing to request a cautionary instruction regarding the "other crimes" evidence that was relevant?
>
> (4)      Did the PCRA court err in summarily denying relief on the claim that all prior counsel were ineffective for failing to preserve the claim that the prosecutor's closing argument violated Appellant's right to due process by calling Appellant a "liar", labeling his defense a "defense of desperation designed to distract the jury", and suggesting that the police themselves thought that Appellant was guilty?
>
> (5)      Did the PCRA court err in summarily denying relief on the claim that trial counsel was ineffective for failing to adequately investigate and present the testimony of eyewitness Syreeta Middlebrooks whose affidavit completely refutes the testimony of the Commonwealth witness?

<u>Commonwealth v. Walls</u>, 4 A.3d 190 (Table), No. 1255 EDA 2009, slip op. at 4-5 (Pa. Super.

Ct. May 12, 2010).  The Superior Court of Pennsylvania affirmed the PCRA court's dismissal of

the PCRA petition.  <u>Id.</u>  On December 10, 2010, the Supreme Court of Pennsylvania denied

petitioner's request for review.  <u>Commonwealth v. Walls</u>, 14 A.3d 838 (Pa. Dec. 17, 2010)

(Table).

The instant <u>pro se</u> petition dated April 28, 2011, was filed in this court on May 6,

2011 (Doc. No. 1).  This <u>pro se</u> petitioner states his habeas claims as follows: "The Defendant(s)

[sic] 6th, 14th Constitution [sic] Rights has [sic] been violated in this case.  All counsel(s) [sic]

in the defendant [sic] case was [sic] Ineffective.  And the Defendant [sic] sentences is [sic] excesses [sic] than [sic] the lawful maximum."  (Pet. ¶ 12(a).)  Petitioner then indicates that his habeas claims were presented on direct appeal and in post-conviction proceedings.  Id. ¶¶ 12(c) and (d).  Petitioner did not submit a memorandum of law in support of his petition.

Respondents filed a response on September 14, 2011, arguing that petitioner's claims are not cognizable in a federal habeas proceeding, procedurally defaulted and/or meritless, and the petition should be denied (Doc. No. 11).  For the reasons set forth herein, the court recommends that the habeas petition be denied.

## II.   DISCUSSION

### A.   Habeas Corpus Standards

Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The provisions of the AEDPA relevant to the instant matter provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court has instructed that the "contrary to" and "unreasonable application" clauses in Section 2254(d)(1) should be viewed independently.  Williams v. Taylor,

529 U.S. 362, 404-05 (2000).  With respect to Section 2254(d)(1), a federal habeas petitioner is entitled to relief under the "contrary to" clause only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Id. at 413.  The Court in Williams was careful to note that most cases will not fit into this category, which is limited to direct and unequivocal contradiction of Supreme Court authority.  Id. at 406-08.

Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams, 529 U.S. at 411.  Relief is appropriate only where the state court decision is also objectively unreasonable.  Id.  See also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (same) (quoting Middleton v. McNeil, 541 U.S. 433, 436 (2004) (quotation omitted)).  "A state court decision will be an 'unreasonable application' if (1) 'the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Appel v. Horn, 250 F.3d 203, 209 (3d Cir. 2001) (quoting Williams, 529 U.S. at 407).

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence.  If a reasonable basis

existed for the factual findings reached in the state courts, then habeas relief is not warranted.

Campbell v. Vaughn, 209 F.3d 280, 290-91 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

### B.    Exhaustion and Procedural Default

It is well established that a prisoner must present all of his claims to a state's

intermediate court, as well as to its supreme court, before a district court may entertain a federal

petition for habeas corpus.  28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838,

845, 847 (1999); Evans v. Court of Common Pleas, Del. County, Pa., 959 F.2d 1227, 1230 (3d

Cir. 1992).[1]  "The exhaustion requirement ensures that state courts have the first opportunity to

review federal constitutional challenges to state convictions and preserves the role of state courts

in protecting federally guaranteed rights."  Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.), cert.

denied, 504 U.S. 944 (1992).  To satisfy the exhaustion requirement, a petitioner must

demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts.

Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275

(1971)).  Petitioner must show that "the claim brought in federal court [is] the substantial

equivalent of that presented to the state courts.  Both the legal theory and the facts supporting a

federal claim must have been submitted to the state courts."  Lesko v. Owens, 881 F.2d 44, 50

(3d Cir. 1989) (citations omitted), cert. denied, 493 U.S. 1036 (1990).

However, when the petitioner cannot obtain state court review of his claims

because of noncompliance with state procedural rules, the doctrine of procedural default

---

[1].    On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement.  The Third Circuit has recognized the validity of this Order. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004), cert. denied, 544 U.S. 1063 (2005).

generally bars federal habeas corpus review.  Coleman v. Thompson, 501 U.S. 722, 729-32

(1991); Sistrunk v. Vaughn, 96 F.3d 666, 674-75 (3d Cir. 1996).  The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the
> petitioner would be required to present his claims in order to meet the
> exhaustion requirement would now find the claims procedurally barred . . .
> there is a procedural default for purposes of federal habeas regardless of
> the decision of the last state court to which the petitioner actually
> presented his claims.

Coleman, 501 U.S. at 735 n. 1.  Upon a finding of procedural default, review of a federal habeas

petition is barred unless the habeas petitioner can show "(1) the procedural rule was not

independent and adequate; (2) cause for his failure to comply with state procedural rules and

prejudice resulting therefore; or (3) that a fundamental miscarriage of justice will occur if not

considered."  Peterkin v. Horn, 176 F. Supp.2d 342, 353 (E.D. Pa. 2001).[2]

C.     **Standard for Ineffective Assistance of Counsel Claims**

Petitioner alleges a single claim of ineffective assistance of counsel.  In Strickland

v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two prong test that a

petitioner must satisfy before a court will find that counsel did not provide effective assistance.

---

[2]     "A state [procedural] rule provides an adequate and independent basis for
precluding federal review if:  (1) the rule speaks in unmistakable terms; (2) all state appellate
courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent
with other decisions."  Boyd v. Waymart, 579 F.3d 330, 368 (3d Cir. 2009) (quotation omitted).
Petitioner can demonstrate cause for procedural default if he can show that some objective factor
external to the defense impeded or prevented his ability to comply with the state procedural rules.
Caswell, 953 F.2d at 862.  The cause must be "something that cannot fairly be attributed to [the
petitioner.]"  Coleman, 501 U.S. at 753.  To show prejudice, petitioner must present evidence
that this factor did more than merely create a possibility of prejudice; it must have "worked to
[petitioner's] actual and substantial disadvantage."  Murray v. Carrier, 477 U.S. 478, 494 (1986)
(emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  This
exception to procedural default is concerned only with "actual" innocence and petitioner must
show that in light of new evidence it is more likely than not that no reasonable juror would have
convicted him absent the claimed error.  Schlup v. Delo, 513 U.S. 298, 327 (1995).

Under the Strickland test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, barring counsel's ineffectiveness, the result of the proceeding would have been different. Id. at 688-96.  The United States Supreme Court recently reaffirmed the applicability of the Strickland standard in federal habeas cases.  Harrington v. Richter, 131 S.Ct. 770 (2011); Premo v. Moore, 131 S.Ct. 733 (2011).

To satisfy the first prong of the Strickland test, a petitioner is required to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted).  As the Supreme Court observed, "[s]urmounting Strickland's high bar is never an easy task."  Premo, 131 S.Ct. at 739 (quotation omitted).  The Court cautioned that the appropriate "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Id. at 740 (quoting Strickland, 466 U.S. at 690).

To satisfy the second prong of the Strickland test, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Id. It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Where, as in the instant case, the state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the state court's decision pursuant to 28 U.S.C. § 2254(d)(1). See Yarborough v. Gentry, 540 U.S. 1, 4 (2003). The Court recently stated:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id. at 689; Lindh v. Murphy, 521 U.S. 320, 333 n.7 . . . , and when the two apply in tandem, review is 'doubly' so. Knowles, 556 U.S. at ___, 129 S.Ct., at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ___, [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Premo, 131 S. Ct. at 740 (quotation omitted).

### D.   **Petitioner's Claims**

As noted above, petitioner states his habeas claims as follows: "The Defendant(s) [sic] 6th, 14th Constitution [sic] Rights has [sic] been violated in this case. All counsel(s) [sic] in the defendant [sic] case was [sic] Ineffective. And the Defendant [sic] sentences is [sic] excesses [sic] than [sic] the lawful maximum." (Pet. ¶ 12(a).) Petitioner then indicates that his habeas claims were presented on direct appeal and in post-conviction proceedings. Id. ¶¶ 12(c) and (d). Petitioner did not submit a memorandum of law in support of his petition.

Petitioner has not provided the court with much guidance as to the substance of his claims.  Respondents are correct that petitioner does not "specify which of the claims litigated in state court he wishes to pursue in this Court."  (Resp. at 13.)  However, the law is settled and clear that "[a] habeas petition prepared by a prisoner without legal assistance may not be skillfully drawn and should thus be read generously.  'It is the policy of the courts to give liberal construction to pro se habeas petitions.'"  Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010) (quoting United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (citation omitted)).  A pro se pleading is held "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  See also Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998) (pro se habeas petition should be construed liberally and with a measure of tolerance).

With these standards in mind, this court has compared the habeas petition with petitioner's direct appeal and PCRA petitions, as referenced by petitioner in his petition.  See Pet. ¶¶ 12(c) and (d).  Interpreting the instant habeas petition liberally, petitioner has provided the bare minimum of information sufficient for this court to identify the claims he raises in the instant habeas petition.  Petitioner has raised the following habeas claims:

1.     The trial court abused its discretion by imposing an excessive or illegal sentence.

2.     Appellate counsel was ineffective for not challenging the trial court's ruling that petitioner could not cross-examine Maurice Robinson about details of pending criminal charges.

3.     Trial counsel was ineffective for failing to request a jury instruction regarding the potential for bias caused by Maurice Robinson's pending charges.

4.      Trial counsel was ineffective for failing to object to or move to exclude evidence of petitioner's other crimes and for not requesting a cautionary instruction regarding that evidence.

5.      Appellate counsel was ineffective for failing to raise of claim that the prosecutor committed misconduct during closing argument.

6.      Trial counsel was ineffective for failing to investigate and call Syreeta Middlebrooks as a defense witness.

See Pet. ¶ 12 (referencing claims that petitioner's sentence is excessive and illegal and that all counsel were ineffective and also referencing that all of these claims were raised on direct appeal or in post-conviction proceedings).[3]

### 1.      Claim No. 1 – Trial Court Abused Its Discretion When It Imposed an Excessive or Illegal Sentence

On direct appeal, petitioner raised a claim asserting that the trial court abused its discretion by imposing an excessive sentence, as well as an illegal sentence.  Commonwealth v. Walls, No. 2224 EDA 2005, slip op. at 4, 6-7 (Pa. Super. Ct. Dec. 12, 2006).  The appellate court concluded that petitioner waived the issue challenging the discretionary aspects of his sentence because petitioner filed his statement under Pa. R. App. P. 1925 untimely.  Id. at 6.  The time to raise this claim in the state courts has passed, and the claim is procedurally defaulted.  Petitioner asserts no grounds to excuse this procedural default and this court may not consider this claim now.

Also on direct appeal, petitioner asserted that his sentence was illegal because the trial court failed to merge his aggravated assault and attempted murder convictions.  Id. at 6-7.

---

[3]      On direct appeal, petitioner also asserted that the verdict was against the weight of the evidence and that the evidence was insufficient to support the convictions.  Petitioner did not reference these claims in the habeas petition.  Construing the habeas petition liberally, the court finds that petitioner did not raise these two claims in his habeas petition.

Since this claim challenges the legality of the sentence, the Superior Court of Pennsylvania found

that it could not be waived and considered the claim on its merits.

After summarizing the principles of merger under Pennsylvania law, the court

stated as follows:

> [T]he threshold question is whether Appellant committed one solitary
> criminal act.  The answer to this question does not turn on whether there was a
> "break in the chain" of criminal activity.  Commonwealth v. Wesley, 860 A.2d at
> 592.  Rather, the answer turns on whether "the actor commits multiple criminal
> acts beyond that which is necessary to establish the bare elements of the additional
> crime[.]" Id., quoting Commonwealth v. Belsar, 676 A.2d 632 (Pa. 1996).  If so,
> then the defendant has committed more than one criminal act.  Id.
> . . .
> Wesley applied these principles to a case similar to the instant matter. In
> Wesley, the defendant shot the victim once in the back.  After the victim reached
> for the defendant's gun, the defendant shot the victim six more times.  The
> Wesley Court concluded that the first shot constituted aggravated assault, while
> the six additional shots constituted the separate crime of attempted murder.  Id. at
> 593.  Those six additional shots went beyond what was necessary to commit the
> first crime of aggravated assault.  See id.
>
> Wesley controls the instant case.  Here, the record reflects that Appellant
> shot Robinson once in the neck.  That first shot was sufficient to support a verdict
> of attempted murder.  Id.  Appellant then shot Robinson once in each thigh and
> subsequently beat him with the pistol.  N.T., 3/25/02, at 79-83.  These additional
> shots and the beating were sufficient to support the crime of aggravated assault.
> See Wesley, 860 A.2d at 593.  Moreover, the beating and shots to Robinson's legs
> went beyond what was necessary to complete the first crime of attempted murder.
> In addition, Appellant also shot Green once in the back and continued to pull the
> trigger while pointing at Green despite running out of ammunition.  N.T., 3/26/02,
> at 95-97.  Appellant attempted to reload his weapon as Green fled.  N.T., 3/25/02,
> at 87.  As such, the record reflects that Appellant committed numerous separate
> criminal acts.  No further merger analysis is required.  Id.  Accordingly, we
> conclude that the trial court did not impose an illegal sentence when it imposed
> separate sentences for aggravated assault and attempted murder.

Id. at 8-10 (emphasis in original and footnote omitted).

As the state court's analysis reveals, petitioner's claim challenging the legality of his sentence addresses only the application of Pennsylvania sentencing law, and as such is not cognizable by a federal court in a habeas proceeding.  As noted by the Superior Court of Pennsylvania, petitioner's claim asserting that his sentence was illegal was based solely on the argument that petitioner's "convictions for aggravated assault and attempted murder should have merged for sentencing purposes."  Id. at 6.  Generally, a state court's sentencing decision and claims arising out of that decision are not cognizable in a federal habeas proceeding, unless the sentence constitutes cruel and unusual punishment under the Eighth Amendment, exceeds the statutory limits[4], or is arbitrary or otherwise in violation of due process.  See Lawson v. Smeal, 2010 WL 2817495, at *15-*16 (E.D. Pa. June 18, 2010), adopted by, 2010 WL 2817491 (E.D. Pa. July 19, 2010); Laboy v. Carroll, 437 F. Supp. 2d 260, 263 (D.Del. 2006).  A federal court may review a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Claims asserting violations of state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review.  Jones v. Supt. Rahway State Prison, 725 F.2d 40, 43 (3d Cir. 1984) (considering claim challenging sentence disparity between codefendants).  See also Estelle v. McGuire, 502 U.S. 62, 67-68, 71-72 (1991) (it is not province of the federal court to re-examine a state court's determination of state law).  Plaintiff's claim should be denied.

---

[4]      The trial court, considering an claim that it abused its discretion in sentencing petitioner, concluded that petitioner's aggregate sentence "did not exceed the statutory maximum sentence he could have received for the crimes he was convicted of committing."  Commonwealth v. Walls, Nos. 0106-0192-0316 (C.P. Phila. Mar. 29, 2006).

2.      **Claim No. 2 – Appellate Counsel was Ineffective for Failing to Challenge the Trial Court's Ruling that Petitioner Could Not Cross-Examine Maurice Robinson About Details of Pending Criminal Charges**

Petitioner raised this issue in his PCRA petition.  Petitioner argued in his PCRA proceeding that appellate counsel should have argued on appeal that the trial court erred in limiting the cross-examination of one of the victims, Maurice Robinson.  Specifically, petitioner contended that he should have been permitted to cross-examine Mr. Robinson about his open criminal charges in order to show that Mr. Robinson's testimony was biased and/or motivated by the desire to gain leniency on the open charges.  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 4 (C.P. Phila. Sept. 30, 2009).  The PCRA court denied this claim because it found that the underlying issue lacked merit and counsel cannot be ineffective for failing to pursue a meritless claim.  Id. at 4-5.  The PCRA court explained as follows:

> Appellate Counsel was not ineffective for failing to raise this issue on direct appeal because counsel cannot be said to be ineffective for failing to raise an issue that is without merit.  Commonwealth v. Tarver, 491 Pa. 253, 420 A.2d 438 (1980); Commonwealth v. Tanner, 600 A.2d 201 (Pa. Super. 1991).  This issue is without merit because Trial Counsel's cross-examination was sufficient to apprise the Jury of any potential bias or improper motivation stemming from the Victim's outstanding criminal charges.  Trial Counsel questioned the Victim about the bench warrant that was issued against him and the fact that he had open criminal charges.  (N.T., 3/26/02, 16-18.)  This line of questioning paralleled the requirements of the case law cited by the Petitioner in his PCRA Petition.

> The Jury did not need to know the specific underlying facts supporting the open criminal charges against the Victim and admission of such testimony would have been improper.  Clearly a witness' credibility cannot be attacked with evidence of a crime unless the crime involves crimen falsi.  Commonwealth v. Days, 718 A.2d 797, 803 (Pa. Super. 1988); Pa. R.E. 609(a).  Furthermore, evidence of other crimes, wrongs, or acts cannot be used to prove the character of a person in order to show that he or she acted in conformity with that character.  Pa. R.E. 404(b)(1).  The Petitioner invokes no exception to these basic rules other than to argue that the evidence was necessary to prove bias and improper motive.

16

As discussed above, the jury heard sufficient evidence pertaining to the Victim's criminal charges for it to assess the Victim's potential bias or potential desire to curry favor with the Philadelphia District Attorney's Office.

Id. at 4-5.  The Superior Court of Pennsylvania affirmed the decision of the PCRA court and adopted the PCRA court's analysis.

At petitioner's trial, the prosecutor questioned Mr. Robinson about the criminal charges pending against him.  The most serious charge pending against Mr. Robinson was criminal trespass.  (N.T., 3/25/02, at 93.)  The prosecutor asked Mr. Robinson whether he had received any promises regarding what would happen to the pending charges or how they would be handled based on the fact that Mr. Robinson testified at petitioner's trial.  Mr. Robinson responded, "No."  Id. at 94.  Mr. Robinson also testified that he did not expect special treatment because of his testimony in court against petitioner.  Id.

Defense counsel cross-examined Mr. Robinson regarding the open criminal charges pending against him.  During the cross-examination, the jury learned that Mr. Robinson failed to appear at a court date on his own criminal matter and that, as a result, a bench warrant had been issued.  (N.T., 3/26/02, at 12-13.)  The jury also heard that an individual named "Miss Ferguson" testified at Mr. Robinson's preliminary hearing and made "allegations" against Mr. Robinson.  Id. at 15-16.  Mr. Robinson agreed on cross-examination that he was held for court, which "meant that the judge made a determination that there was a sufficient amount of evidence for it to go to trial."  Id. at 17.  Defense counsel also asked Mr. Robinson if the District Attorney provided assistance in having the bench warrant lifted.  Id. at 17-18.  Mr. Robinson stated "no," and testified that he has a lawyer and that his lawyer recommended that he take certain steps to have the bench warrant lifted.  Id. at 18.

17

From these exchanges on direct and cross-examination of Mr. Robinson, it is clear that the jury knew about the criminal charges pending against Mr. Robinson and that he had received no promises with respect to those charges in exchange for his testimony against petitioner.  These were the facts that petitioner wanted relayed to the jury.  As noted by the PCRA court, the jury heard sufficient evidence pertaining to Mr. Robinson's criminal charges for it to assess his bias or improper motive.  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 5 (C.P. Phila. Sept. 30, 2009).  The testimony from Mr. Robinson petitioner desired to have before the jury was, in fact, presented to the jury.  Appellate counsel cannot be faulted for failing to raise this claim on appeal.

Additionally, the exact nature of the pending charges was inadmissible under the Pennsylvania Rules of Evidence as explained by the PCRA court in the language quoted above. Id. at 5.  "It is well established that an inquiry into whether evidence was properly admitted . . . under state law 'is [not] part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  Holden v. Mechling, 2006 WL 758287, at *5 (M.D. Pa. Mar. 22, 2006) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  "As a general rule, evidentiary errors made by the state court are not considered to be of constitutional proportions, such that they are cognizable in a federal habeas proceeding, unless the error deprives the defendant of fundamental fairness in his criminal trial."  Laird v. Horn, 159 F.Supp. 2d 58, 98-99 (E.D. Pa. 2001).  Any claim by petitioner that the trial court erred in refusing to allow further cross-examination into the specifics of the criminal charges pending against Mr. Robinson is not cognizable in this habeas proceeding.

For all of these reasons, petitioner's second claim should be denied.

> 3.      **Claim No. 3 – Trial Counsel was Ineffective for Failing to Request a Jury Instruction Regarding the Potential for Bias Caused by Mr. Robinson's Pending Criminal Charges**

Petitioner next contends that trial counsel was ineffective for failing to request a jury instruction regarding the potential for bias caused by the criminal charges pending against Mr. Robinson.  Petitioner raised this issue in his PCRA petition.  The PCRA court denied this claim and stated as follows:

> The Petitioner argues that Trial Counsel was ineffective for failing to seek a specific jury instruction explaining that the open criminal charges against the Victim could be considered during deliberations when assessing the credibility of the Victim's testimony. ... [The cases cited by Petitioner] do not discuss special jury instructions, and, to the best of this Court's knowledge, the law in Pennsylvania does not require special jury instructions.  The cases cited by the Petitioner relate to the right to confront hostile witnesses and stand for the proposition that a Commonwealth witness with open criminal charges should be subject to cross-examination related to those open charges.  In [Commonwealth v. Evans, 512 A.2d 626 (Pa. 1986)], the Pennsylvania Supreme Court wrote:

>> [W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury.  Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution.  And if that possibility exists, the jury should know about it.

> In Commonwealth v. Thompson, 739 A.2d 1023, 1030 (Pa. 1999), the Court addressed jury instructions related to the open criminal charges of a Commonwealth witness.  The fact pattern of Thompson was not on point with the case sub judice; however, this Court found Thompson informative.  In Thompson, the Court declined to award a new trial despite the fact that the trial judge specifically instructed the jury that a witness' open criminal charges were only relevant to determine that he was in custody when he made statements to homicide detectives.  On review, the Supreme Court ruled that the trial judge

committed a harmless error causing no prejudice when he gave this erroneous instruction. In support of this ruling, the Court highlighted four facts that were critical in eliminating prejudice. First, the Court focused on defense counsel's closing argument wherein counsel argues that the witness testified favorably in an attempt to curry favor with the Commonwealth. Second, the Court stated that the trial court's final charge to the jury correctly stated legal principles regarding witness credibility. Third, the Court cited the fact that the witness' credibility had been extensively impeached by his thirteen past <u>crimen</u> <u>falsi</u> convictions. Finally, the Court stated that substantial additional evidence implicated the defendant. (<u>Id.</u> 244, 1031.)

The fact pattern in support of awarding a new trial was stronger in <u>Thompson</u> than in the case <u>sub judice</u>. This Trial Court never gave an erroneous instruction that improperly limited the Jury's assessment or use of the Victim's open criminal charges. In light of the trial judge's final instruction referenced in <u>Thompson</u>, the jury instruction given by this Court more than adequately explained to the jury how to go about assessing the Victim's credibility. This Court instructed the Jury as follows:

> In going over what each witness said, think about whether a witness had an interest in the outcome of the case. Was the witness friendly to or hostile toward the people involved in the case? How did the witness sound and behave on the witness stand? Did the witness show bias or prejudice which might slant the evidence? . . .

> In deciding which of conflicting testimony to believe you should not necessarily be swayed by the number of witnesses on either side. You should consider whether the witnesses appear to be biased or unbiased.

(N.T., 3/27/02, 54.)

Just as in <u>Thompson</u>, Trial Counsel was permitted to cross-examine the Victim pertaining to his open criminal charges. Counsel was also free to present this issue in his closing argument if he had so chosen. As in <u>Thompson</u>, additional evidence supported the Victim's testimony. For example, a second Victim also testified as to being shot by the Petitioner in connection with the occurrence at issue in the case <u>sub judice</u>.

<u>Commonwealth v. Walls</u>, Nos. 0106-0192-0316, slip op. at 5-8 (C.P. Phila. Sept. 30, 2009).

Respondents admit that, had trial counsel requested it, petitioner would have been entitled to a jury instruction that the jury could find Mr. Robinson to be biased in favor of the

prosecution due to his open criminal charges.  However, the Supreme Court of Pennsylvania, as noted by the state court in the language quoted above, concluded that counsel will not be found ineffective for failing to request such an instruction where the jury was informed through testimony and argument of the possibility of bias and where the trial court properly charged the jury on assessing witness credibility.  Thompson, 739 A.2d at 1030-31.

Here, the trial court twice instructed the jury on assessing credibility.  In addition to the instruction in its closing jury charge quoted above, the trial court gave the following preliminary charge prior to the opening statements:

> Now, in judging credibility and weight you should use your understanding of human nature and your own common sense.  Please observe each witness carefully as he or she testifies.  Be alert for anything in his or her words, demeanor, or behavior on the witness stand, or for anything in the other evidence in the case which might help you to judge the truthfulness and the accuracy and the weight of the witness's testimony.

(N.T., 3/25/02, at 29.)  Additionally, the prosecutor initially raised the potential for bias on the part of Mr. Robinson because of his open criminal charges to the attention of the jury, see 3/25/02, at 93-95, and defense counsel further cross-examined Mr. Robinson on this topic, see N.T., 3/26/02, at 12-18.  Trial counsel was not ineffective for failing to request a jury instruction regarding potential bias on the part of Mr. Robinson.  In accordance with the requirements of state law, the issue was placed before the jury by the prosecution and defense counsel and the trial court gave appropriate instructions regarding assessing credibility and weight of testimony. Trial counsel cannot be found to be ineffective for failing to raise a meritless claim.  Petitioner's third habeas claim should be denied.

    **4.**       **Claim No. 4 – Trial Counsel was Ineffective for Failing to Object to or Move to Exclude Evidence of Petitioner's Other Crimes and For Not Requesting a Cautionary Instruction <u>Regarding that Evidence</u>**

Petitioner raised this claim in his PCRA petition.  The court refers to this <u>pro</u> <u>se</u> petitioner's PCRA petition, <u>see</u> Resp. Ex. F, for further elucidation of this claim.  Petitioner explained in his PCRA petition that this claim alleges ineffective assistance of counsel concerning three distinct but related instances of "other crimes" or "bad acts" evidence.  (Resp. Ex. F at 18 (PCRA Petition dated Mar. 3, 2008).)  Petitioner identifies the three instances of "other crimes" or "bad acts" evidence as follows: (1) petitioner was arrested, <u>id.</u> (citing N.T., 3/26/02, at 136); (2) when arrested petitioner had a .38 caliber weapon in his possession, <u>id.</u> (citing N.T. 3/26/02, at 144-45); and (3) when arrested petitioner provided the police with an alias, <u>id.</u> at 18-19 (citing N.T., 3/26/02, at 144).  The PCRA court rejected these three claims of ineffective assistance of counsel.

        **a.**      **Petitioner's Arrest**

The PCRA court denied petitioner's claim that trial counsel failed to object to evidence regarding his arrest in April 2011 because the record "clearly illustrates that Trial Counsel objected to the admission of this testimony."  <u>Commonwealth v. Walls</u>, Nos. 0106-0192-0316, slip op. at 8 (C.P. Phila. Sept. 30, 2009).  During the examination of Detective Gregory Michael, the prosecutor asked questions regarding the arrest warrant that had been issued for petitioner.  (N.T., 3/26/02, at 133-38.)  Defense counsel objected when the prosecutor asked the Detective what steps he took "to try to find Mr. Walls?"  <u>Id.</u> at 134.  A discussion was held off the record and the court overruled the objection when court resumed.  <u>Id.</u>  The Detective

further testified that petitioner was arrested on April 26, 2001 for gun violations.  Id. at 136-37.

Petitioner was arrested under another name and, after he was fingerprinted and positively

identified, the Detective was notified and served the warrant on petitioner.  Id.  Petitioner's claim

that trial counsel was ineffective for failing to object to the admission of this evidence must fail

as trial counsel did, in fact, object to the admission of this evidence.

      The PCRA court also rejected petitioner's claim that trial counsel was ineffective

for failing to request a cautionary instruction regarding how the jury should consider the evidence

that petitioner had been arrested.  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 8-9

(C.P. Phila. Sept. 30, 2009).  The PCRA court explained as follows:

> The Petitioner's argument pertaining to the failure to request a special jury
> instruction is without merit because he did not suffer prejudice as a result of Trial
> Counsel's omission.  This Court sufficiently instructed the jury on how to
> evaluate the fact that the Petitioner had been arrested.  This Court instructed, "Do
> not base your decision on the fact that the [Petitioner] was arrested and charged
> and brought to trial. . ..  The mere fact that he was arrested and charged with a
> crime is not evidence of guilt."  (N.T., 3/27/02, 50-51.)  Any failure to request a
> special instruction was rendered moot by the instructions actually given because
> the Supreme Court consistently held that jury instructions must be taken as a
> whole and that prejudicial or reversible error cannot be predicated on an isolated
> excerpt.  Commonwealth v. Baez, 554 Pa. 66, 117, 720 A.2d 711, 736 (1998);
> Commonwealth v. Woodward, 483 Pa. 1, 4, 394 A.2d 508, 510 (1978).

Id.

      This court agrees with the state court's determination that petitioner suffered no

prejudice as a result of trial counsel's failure to request a cautionary instruction regarding the

jury's consideration of petitioner's arrest because the trial court sufficiently instructed the jury on

this matter.  Petitioner fails to satisfy the second prong of the Strickland standard and his

23

ineffective assistance of counsel claim regarding counsel's failure to request a jury instruction should be denied.

### b.      Petitioner's Possession of a .38 Caliber Weapon

At the time petitioner was arrested on April 26, 2001, he had a .38 caliber revolver in his possession.  (N.T., 3/26/02, at 145.)  Petitioner alleges that trial counsel was ineffective for failing to object to or oppose the admission of this evidence.  Again, petitioner's argument is belied by the fact that the admission of the firearm into evidence was the subject of a motion in limine filed by the prosecutor and argued before the trial court on March 25, 2002.  (N.T., 3/25/02, at 3-16.)  Defense counsel vigorously argued against admission into evidence of the .38 caliber revolver found in petitioner's possession when he was arrested.  Counsel cannot be found ineffective for failing to take action he, in fact, took.

The PCRA court also rejected petitioner's claim that trial counsel was ineffective for failing to request a jury instruction regarding how the jury should consider evidence relating to the gun recovered from petitioner at his arrest.  The PCRA court concluded that, under Pennsylvania law, such a special instruction was not required.  The PCRA court explained as follows:

> The Petitioner's argument pertaining to the failure to request a special jury instruction is without merit because the Jury could consider the Petitioner's possession of a .38 caliber revolver as evidence showing guilt.  This is because the Victims in the case sub judice were shot with a .38 caliber bullet and ammunition for a .38 caliber revolver were recovered from the crime scene.  The Supreme Court of Pennsylvania has held:

>> A weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant has a weapon similar to the one used in the

24

> perpetuation of the crime.  Any uncertainty that the weapon is the actual
> weapon used in the crime goes to the weight of such evidence.
>
> Commonwealth v. Williams, 640 A.2d 1251, 1260 (Pa. 1994); see also
> Commonwealth v. Clayton, 532 A.2d 385, 390 (1987).

Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 9 (C.P. Phila. Sept. 30, 2009).  Since

no special instruction is required under Pennsylvania law in this situation, trial counsel was not

ineffective for not requesting one.  Petitioner's habeas claim should be denied.

### c.      Petitioner's Use of An Alias When Arrested

The PCRA court also denied this claim.  The PCRA court held that trial counsel

was not ineffective for failing to object to testimony that petitioner identified himself as "Elmain

Gray" when arrested in April, 2001, or for failing to request a special jury instruction regarding

this evidence.  The PCRA court concluded that petitioner's "use of an alias was relevant and

admissible to illustrate his conscious guilt."  Commonwealth v. Walls, Nos. 0106-0192-0316,

slip op. at 10 (C.P. Phila.  Sept. 30, 2009) (citing Pennsylvania case law).

A federal habeas court does not sit to reconsider a state court's interpretation or

application of state evidentiary law.  The PCRA court concluded that the evidence regarding

petitioner's use of an alias was properly admitted and, therefore, trial counsel was not ineffective

for failing to raise a meritless objection.  Nor did petitioner suffer prejudice as a result of trial

counsel's failure to request a special jury instruction regarding petitioner's use of an alias.  As

such petitioner failed to satisfy the second prong of the Strickland standard.  For all these

reasons, petitioner's ineffective assistance of counsel claim should be denied.

> **5.      Claim No. 5 – Trial and Appellate Counsel was Ineffective for Failing to Raise a Claim that the Prosecutor Committed <u>Misconduct During Closing Argument</u>**

Referring to petitioner's PCRA petition, <u>see</u> Resp. Ex. F at 22-23, petitioner challenges the following statements made by the prosecutor during his closing argument.  First, petitioner contends that trial counsel was ineffective for failing to object to the following comments by the prosecutor:

> [The police] weren't witnesses.  They were investigators.  They collected evidence.  They looked in places.  They talked to people.  They did what they were supposed to do. They followed the evidence.  And they don't know this defendant from a hole in the wall.  They don't have any reason to want to frame this defendant for this shooting.
>
> They arrested this defendant 'cause all of the evidence led them to this defendant.  If all of the evidence had led them to me they would have arrested me. In this particular case their investigation led to one conclusion.  He's the guy that needs to be arrested.

<u>Id.</u> at 22 (quoting N.T., 3/27/02, at 29).

Second, petitioner argues that trial counsel was ineffective because he failed to object to two instances during the prosecutor's closing argument where the prosecutor stated that petitioner "lies."  <u>Id.</u> at 23 (citing N.T., 3/27/02, pp. 38-39.)

Lastly, petitioner challenges the following comments by the prosecutor during closing argument:

> Mr. Meehan [defense counsel] during his closing, I'm not sure if he referred more than once or twice to anything that actually happened on this stand. He throws out a bunch of theories.  What I call defenses of desperation.  [Defense objection overruled.]  The reason I say that is because when you think about them, they're not defenses that are based on the evidence.  They're defenses intended to distract your attention from the evidence.  'Cause he doesn't want you thinking about the evidence 'cause the evidence is damning to that man.

So he's hoping, if I throw enough things out there maybe they will think about things that didn't come from the stand, other things that they never heard about.

Id. (quoting N.T., 3/27/02, at 39-40).  Trial counsel's objection to this third passage was overruled by the trial court.  Petitioner contends that appellate counsel was ineffective for failing to pursue claims of prosecutorial misconduct on appeal.  Id.

Not every inappropriate comment by a prosecutor amounts to prosecutorial misconduct giving rise to a potential ineffective assistance of counsel claim.  To determine whether counsel was ineffective for failing to object to statements by a prosecutor, this court must first determine whether the underlying claim of prosecutorial conduct has merit.  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  A petitioner seeking the writ of habeas corpus will not succeed merely because the prosecutor's actions "were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotations omitted).  Rather, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  See Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  See also Fahy v. Horn, 516 F.3d 169, 199 (3d Cir. 2008) (same).

While a prosecutor's comments during closing arguments must be directed to an understanding of the facts and of the law rather than to passion and prejudice, Lesko v. Lehman, 925 F.2d 1524, 1545 (3d Cir.) (citing United States ex rel. Perry v. Mulligan, 544 F.2d 674, 680 (3d Cir. 1976)), cert. denied, 502 U.S. 898 (1991), the prosecution is "accorded reasonable latitude and may employ oratorical flair arguing its version of the case to the jury."  Henry v.

27

Horn, 218 F.Supp. 2d 671, 705 (E.D. Pa. 2002) (noting that this standard under Pennsylvania law

is not contrary to the federal Darden standard for adjudging claims of prosecutorial misconduct).

In evaluating whether petitioner was denied his right to a fair trial as a result of the prosecutorial

argument, the court must look at the prosecutor's comments in the context of the trial.  Laird v.

Horn, 159 F.Supp. 2d 58, 129 (E.D. Pa. 2001), aff'd, 414 F.3d 419 (3d Cir. 2005), cert. denied,

546 U.S. 1146 (2006).  Where an error occurs, the inquiry then becomes whether, in light of the

record as a whole, the prosecutor's conduct "had substantial and injurious effect or influence in

determining the jury's verdict."  Brecht v. Abramson, 507 U.S. 619, 638 (1993) (quotations

omitted).

A careful review of the trial transcript reveals that the trial judge gave to the jury

numerous cautionary instructions regarding statements by the attorneys.  In his preliminary

instructions, the trial judge stated as follows:

> You are not bound by nor should you consider any opinion which  you might think counsel or even I have expressed concerning guilt or innocence, credibility of the witnesses, weight of the evidence, or inferences to be drawn from the facts.

> Statements or arguments made by counsel do not constitute evidence.  The questions which counsel put to witnesses are not themselves evidence.  It is the witnesses's answers which provide the evidence for you.  Nor should you speculate or guess that a fact may be true merely because one of the lawyers asks a question which assumes or suggests that a fact is true.

(N.T., 3/25/02, at 32-33.)  At the close of the first day of the trial, in response to a question from

a juror, the trial judge reminded the jury that "the evidence comes in witness by witness, question

by question, answer by answer.  It's not the questions that are evidence . . . it is the answers."

Id. at 97.  Immediately prior to closing arguments, the trial judge cautioned the jury as follows:

"[I]t is now time for closing arguments.  Now, I have to tell you, even though these arguments of

counsel do not constitute evidence, you should consider them carefully."  (N.T., 3/27/02, at 7.)

Finally, after the closing arguments and in his final jury charge, the trial judge again told the jury

to "[p]lease remember that the evidence is what you heard and saw from the witnesses and not

the questions or speeches of the rest of us."  Id. at 52-53.

Considering the prosecutor's comments in the context of the entire trial, including

the court's numerous cautionary instructions, petitioner has failed to show that the prosecutor's

comments were so egregious that they fatally infected the proceedings, rendered the entire trial

fundamentally unfair, and made the conviction a denial of due process.  In the first passage

challenged by petitioner, petitioner urges that the prosecutor improperly suggested that petitioner

was guilty because the police investigation led to petitioner's arrest.  As noted by the PCRA

court, "[t]his statement was based on the testimony of law enforcement officials who testified at

trial."  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 12 (C.P. Phila. Sept. 30,

2009).  This statement also was a fair response to arguments made by trial counsel in his closing

argument.  The PCRA court explained as follows:

> This statement also rebutted statements and arguments made by the
> Petitioner's Trial Counsel in closing.  Trial Counsel argued that the physical
> evidence did not support the Victims' versions of the shooting confrontation.  He
> attacked the investigation conducted by law enforcement when he stated that there
> was "absolutely no testimony to indicate that the [Petitioner] had a gun on him
> that day."  (N.T., 3/27/02, at 20.)  Trial Counsel went on to argue that the Victims
> lied to the police because "[t]hey didn't want to be arrested for the attempted
> shooting and assault."  Id.  The Prosecutor needed to rebut Trial Counsel's attack
> on the evidence developed during the Commonwealth's investigation.  The
> Petitioner's request for a new trial based on this argument does not hold up to
> logical analysis because he cannot prove that he suffered actual prejudice based on
> counsel's ineffectiveness.  The Jury was already fully aware of the fact that law

29

enforcement officials conducted an investigation prior to arresting and charging the Petitioner.

Id.

Any potential misconduct was cured by the trial court's cautionary instruction:

Do not base your decision on the fact that the defendant was arrested and charged and brought to trial.

Now, I told you before that the defendant is presumed innocent during the trial. The mere fact that he was arrested and charged with a crime is not evidence of guilt. I also told you that the defendant does not have to present any evidence or prove or show anything in his own defense.

(N.T., 3/27/02, at 51.)

With respect to petitioner's assertions that the prosecutor stated that petitioner lied, as pointed out by the PCRA court, in the cases cited by petitioner in his PCRA brief, the prosecutor argued that a witness or defendant lied when testifying at trial, infringing upon the jury's duty to make credibility determinations. Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 13 n.5 (C.P. Phila. Sept. 30, 2009). Here, the prosecutor was describing petitioner's behavior in attempting to avoid arrest eight months after the shootings at issue. In addressing this issue, the PCRA court quoted one particular section of the prosecutor's closing argument: "Defendant's not found 'till he's arrested eight months later. So he runs and hides. But he also lies. 'Cause he knows the evidence. He knows he shot these guys. That's his consciousness of guilt . . . So the [Petitioner's] own actions, running, and hiding, lying, show his consciousness of his own guilt." Id. (quoting N.T., 3/27/02, at 39.)

The prosecutor was making a "fair comment on the evidence adduced at trial." United States v. Reilly, 33 F.3d 1396, 1421 (3d Cir. 1994) (quoting United States v. Pungitore,

910 F.2d 1084, 1127 (3d Cir. 1990) cert. denied, 500 U.S. 915 (1991)).  While statements by a prosecutor that a defendant lied may, in some instances, be an improper expression of the prosecutor's personal belief, here it is not.  The evidence adduced at trial was that petitioner lied about his identity when arrested in April 2001.  As noted earlier, the state court's admission of evidence regarding petitioner's use of an alias was proper; it is proper for the prosecutor to refer to the evidence in his closing argument.

Since the prosecutor's comments were proper, trial counsel cannot be found to be ineffective for failing to raise a meritless objection, and appellate counsel cannot be found to be ineffective for failing to raise a meritless claim on appeal.

Finally, petitioner challenges the prosecutor's comments regarding "defenses of desperation."  As noted by the PCRA court, the prosecutor's comments were a fair response to defense counsel's closing argument.  Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 13-14 (C.P. Phila. Sept. 30, 2009).  Defense counsel argued that there was no evidence to support the charges against petitioner.  Defense counsel further argued that the victims brought the gun to the place of the shooting and that petitioner wrestled the guns away from the victims and shot the victims.  Id. (citing N.T., 3/27/02, at 20).  In his closing, the prosecutor highlighted the fact that no evidence supported defense counsel's theories.  The prosecutor's comments were made to rebut defense counsel's speculation that Mr. Robinson, not petitioner, brought the gun to the scene.[5]  As such, the prosecutor's comments were a fair response invited by the defense counsel's speculations.  Additionally, the prosecutor's comments were supported by the evidence presented

---

[5]    In his closing statement, defense counsel remarked as follows: "I can't tell you exactly what happened out there.  I can speculate.  I can think of a scenario that explains those injuries."  (N.T., 3/27/02, at 9.)

at trial.  Moreover, any prejudice by this comment was cured by the trial court's cautionary instruction:

> And to the extent you heard the Commonwealth speak of defenses of desperation or something of that nature, please keep in mind and remember what I just said, the defendant does not have to present any evidence or show anything in his own defense.  The Commonwealth has the job of proving beyond a reasonable doubt each element of the crimes charged, and that the defendant is the guilty person.

Id.

Considering all of these factors, the state court's rejection of petitioner's ineffective assistance of counsel claims based upon failure to object to statements by the prosecutor or to raise prosecutorial claims on appeal, was not contrary to, or an unreasonable application of, clearly established federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1) and (2). Petitioner's ineffective assistance of counsel claims should be denied.

### 6.    Claim No. 6 – Trial Counsel was Ineffective for Failing to Investigate and Call Syreeta Middlebrooks as a Defense Witness

Petitioner contends that the testimony of Syreeta Middlebrooks, the mother of petitioner's child, would have supported petitioner's assertion that he acted in self defense. (Resp. Ex. F at 1-5, Ex. I at 30-34.)  The PCRA court rejected this claim finding that petitioner had waived it.  The PCRA court stated as follows:

> The Petitioner claims that Trial Counsel was ineffective for failing to investigate and elicit testimony from the mother of his child, Ms. Syreeta Middlebrooks.  However, the Petitioner waived the ability to proceed on this claim.  At trial, the Petitioner voluntarily decided not to present evidence during his case-in-chief.  (N.T., 3/26/02, 147-149.)  A Petitioner who voluntarily waives the right to call witnesses during a colloquy cannot later claim that counsel was

32

ineffective for failing to present a witness.  See Commonwealth v. Lawson, 762
A.2d 753, 756 (Pa. Super. 2000); Commonwealth v. Davis, 554 A.2d 104, 112
(Pa. Super. 1989) (if appellant had been dissatisfied with trial counsel's strategy at
trial, he should have brought the matter to the trial judge's attention).

Commonwealth v. Walls, Nos. 0106-0192-0316, slip op. at 16 (C.P. Phila. Sept. 30, 2009).  See

Commonwealth v. Lawson, 762 A.2d 753, 756 (Pa. Super. Ct. 2000) (defendant who voluntarily

waives the right to call witnesses during a colloquy cannot later claim that counsel was

ineffective for failing to present witnesses).

At the trial, the trial judge questioned petitioner on the record regarding his desire

not to testify or to present other evidence.  (N.T., 3/26/02, at 147-49.)  Very specifically, the

court informed petitioner as follows: "However, you have the right to testify and you have the

right to present evidence if you so desire.  It's strictly and totally a matter that's up to the

defendant in a criminal case.  Do you understand?"  Id. at 148.  Petitioner responded in the

affirmative.  Id.  In further response to the trial judge's inquiries, petitioner affirmed that he had

discussed this matter with counsel, and that it was petitioner's decision.  Id. at 148-49.  Under

applicable state law, this claim was waived and is not exhausted.  It now is procedurally

defaulted and this court cannot consider it here.

Under the habeas statute, the court has discretion to deny a claim on the merits

even though it may be unexhausted and procedurally defaulted.  See 28 U.S.C. §2254(b)(2).  See

also Hameen v. Delaware, 212 F.3d 226, 251-52 (3d Cir. 2000) (court decided merits of habeas

petition rather than review claim that the issue was procedurally defaulted in the state courts).

The court will exercise its discretion and examine the merits of petitioner's sixth claim.

The United States Constitution does not require counsel to call each and every witness who is suggested by the client.  Bowen v. Blaine, 243 F.Supp. 2d 296, 311 (E.D. Pa. 2003).  A decision not to use certain witnesses does not constitute ineffective assistance of counsel if it "amounted to a tactical decision within the parameters of reasonable professional judgment."  Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied, 534 U.S. 919 (2001).  Furthermore, even if counsel should have called a witness to testify, in order to show ineffective assistance of counsel, petitioner must show that the witness was available to testify, Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir.), cert. denied, 502 U.S. 902 (1991), and that "a reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial."  Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990).

Evidence presented at the trial revealed that the house in which Ms. Middlebrooks had resided, and where the shooting occurred, had been abandoned.  (N.T., 3/25/02, at 136.)  Six years after the trial, Ms. Middlebrooks signed an affidavit stating that she would have cooperated with defense counsel and would have appeared in court.  (Resp. Ex. F.)  It is unclear that petitioner and/or defense counsel knew of the witness's whereabouts at the time of the trial and that she was available to testify.

Additionally, review of the statements contained in Ms. Middlebrook's affidavit and the witness's statements to police immediately after the shooting, do not present a reasonable likelihood that a different result at the trial would have occurred.  Immediately after the shooting, Ms. Middlebrooks told the police that she went inside the house when petitioner and Mr. Robinson began to argue and that she remained inside when she heard the gunshots.  (Resp. Ex.

34

L (Investigative Report at 2).)  Ms. Middlebrooks was not an eyewitness to the shooting.  In her

affidavit, Ms. Middlebrooks does not state that Mr. Robinson, and not petitioner, had the gun.

Petitioner has failed to show that Ms. Middlebrook's testimony would have dictated a different

result at trial.  Petitioner's final habeas claim should be denied.

## III.   CONCLUSION

For all of the above reasons, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 20th day of December, 2011, the court respectfully recommends

that the petition for a writ of habeas corpus be DENIED, and that no certificate of appealability

be issued.[6]

Petitioner may file objections to the Report and Recommendation.  See Loc. R.

Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

 /s/  Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

---

[6]        The COA should be denied because petitioner has not shown that reasonable
jurists could debate whether his petition should be resolved in a different manner or that the
issues presented are adequate to deserve encouragement to proceed further.  See Miller-El v.
Cockrell, 537 U.S. 322, 336 (2003).